UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHAD MAERTZ,

        Petitioner,

  v.                                     Case No. 07-C-811

GREG GRAMS,

        Respondent.

**DECISION AND ORDER**

      Chad Maertz was convicted of attempted forceful abduction of a sixteen-year-old girl. At trial, he admitted that he stopped the girl, who was riding her bike at the time, but argued that he merely wanted to speak with her because she had swerved her bike in front of his truck. Following his conviction and appeal, he filed this petition under 28 U.S.C. § 2254, and counsel was appointed. Maertz argues he was denied the right to a fair trial because the trial court admitted evidence of his prior convictions and because it allowed the prosecutor to make improper remarks during closing argument. For the reasons given herein, the motion to dismiss will be granted.

**I. ANALYSIS**

      The respondent has moved to dismiss two of the petition's three claims on the basis that the petitioner failed to exhaust in the state courts the claims he now brings in this federal action. The requirement that a federal habeas petitioner exhaust his state remedies is found in 28 U.S.C. § 2254(b)(1)(A), which provides that a petition "shall not be granted unless it appears that . . . the

applicant has exhausted the remedies available in the courts of the State." The Seventh Circuit has explained the governing principles:

> A petitioner is generally required to exhaust all of his available state court remedies before seeking a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1)(A); This so-called exhaustion-of-state-remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights. The petitioner is therefore required to first "present the state courts with the same claim he urges upon the federal courts." If the petitioner fails to do so and the opportunity to raise that claim in state court has lapsed, the petitioner has procedurally defaulted his claim, and a federal court is precluded from reviewing the merits of his habeas petition.

*Lieberman v. Thomas,* 505 F.3d 665, 669-670 (7th Cir. 2007) (citations omitted).

The petitioner must present the "same claim" in the state courts that he later presents to the federal court, *id*., and here the question involves the extent to which the claims presented must be the "same." It is true that an appellant in state court need not cite "book and verse" underlying his Constitutional claim, but he must nevertheless cite the operative facts in such a way that he "alerted the state court to the federal nature of his claim in a manner sufficient to allow that court to address the issue on a federal basis." *Id*. at 670. In determining whether the petitioner alerted the state court to the federal nature of his claims, the federal court may look to whether he "cited either federal cases that employed constitutional analysis or state cases that applied a constitutional analysis to a set of similar facts." *Id.*

**A. "Other Acts" Evidence**

As noted earlier, the respondent has moved to dismiss two claims for failure to exhaust. In the first claim, the petitioner asserts that he was deprived the right to a fair trial when "other acts" evidence was introduced in his trial. Specifically, the trial court allowed into evidence the fact that Maertz had been convicted of two prior child sexual assaults. Examination of both the state court

2

opinion as well as petitioner's appellate brief demonstrates that he never presented his claims as matters involving the application of federal constitutional law. *State v. Maertz,* 2007 WI App 19, 298 Wis.2d 549, 727 N.W.2d 374 (Wis. Ct. App. 2006). Maertz first argued that the trial judge erred in applying the state's "greater latitude" rule, which allows more lenience in the introduction of other acts evidence in cases involving child sexual assault. *See State v. Davidson,* 2000 WI 91, ¶ 36, 236 Wis.2d 537, 555, 613 N.W.2d 606, 615 (Wis. 2000). Maertz argued that the rule should not have been applied to him because he was charged with abduction rather than sexual assault; as such, he directed this argument solely at convincing the court of appeals that the trial judge had erred in applying *state* law: "By accepting the State's tortured application of the greater latitude rule, the trial court expanded the greater latitude rule far beyond the confines of Wisconsin case law." (Answ., Ex. E at 14.) This line of argument in no way alerted the state courts that Maertz was asserting a violation of the United States Constitution.

Maertz further argued that the other acts evidence should have been excluded under the *Sullivan* test for admissibility, a standard that is echoed throughout countless Wisconsin cases. *State v. Sullivan,* 216 Wis.2d 768, 772, 576 N.W.2d 30 (1998). The court of appeals here relied on *State v. Hunt,* a recent state supreme court opinion, for the relevant principles governing admissibility:

> The three-part test [for deciding the admissibility of other-acts evidence] asks the court to consider: (1) Whether the evidence is offered for a permissible purpose; (2) whether the evidence is relevant; and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the jury or needless delay.

*State v. Hunt,* 2003 WI 81, ¶ 32, 263 Wis.2d 1, 24, 666 N.W.2d 771, 782 (Wis. 2003) (citing *Sullivan,* 216 Wis.2d 768, 772, 576 N.W.2d 30). Notably, *Hunt* did not rely on any federal

3

constitutional principles in setting forth the three-part test for admissibility, and the court of appeals did not discuss any federal constitutional issues in its opinion.

As with his argument that the "greater latitude" rule should not apply to him, Maertz made his admissibility argument under state, rather than federal, law. He cited no federal cases, and his citations were limited to state statutes and cases. He concluded his argument to the court of appeals by stating that "[t]he unfairly prejudicial evidence the State was allowed to present to the jury is exactly the type of evidence that Wis. Stat. § 904.04(2) contemplates excluding." (Answ., Ex. E at 18.) Given his line of argument, a court ruling on Maertz's arguments would not reasonably have concluded that Maertz was attempting to make an argument based on federal constitutional law. It is thus not surprising that the state court of appeals did not cite a single federal case in its analysis.

In fact, the prohibition on the introduction of "other acts" evidence does not arise from a specific provision in the Bill or Rights or any United States Supreme Court decision – it arises from state statute. *See* Wis. Stat. § 904.04. Indeed, the Federal Rules of Evidence explicitly authorize the admission of such evidence in cases involving charges of sexual assault and child molestation. *See* Fed. R. Evid. 413, 414. It is not a stretch to envision a state court violating the three-part test set forth above by erring in its appraisal of the probative value of a given piece of evidence even while not *necessarily* violating any federal constitutional principles. This is underscored by the fact that § 904.04 echoes the federal Rule 404(b), and federal courts considering evidentiary challenges under that rule do not routinely analyze the matter as a Constitutional one. Fed. R. Evid. 404(b). As the Seventh Circuit noted in a habeas challenge, "If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission." *Watkins*

4

*v. Meloy,* 95 F.3d 4, 7 (7th Cir. 1996). The court in *Watkins* went on to point out that a violation of 404(b) (or the state equivalent) did not necessarily give rise to a *constitutional* violation:

> Watkins' argument is that the two alleged rapes were too dissimilar for C.C.'s testimony to illuminate any issue in S.H.'s case, and so the only purpose and effect of the testimony could have been to show that he was a bad man. But this amounts to arguing that a violation of Fed. R. Evid. 404(b), or its state law counterpart, automatically establishes a denial of due process. . . . Something worse than a garden-variety violation of the standard of 404(b) must be shown to cross the constitutional threshold, and was not here.

*Id.*

Thus, because a 404(b)-style violation does not necessarily give rise to any constitutional concerns, arguing an appeal on that evidentiary basis does not suffice to put the state courts on notice that one is raising a constitutional argument as well. Accordingly, I conclude that Maertz never presented a federal constitutional claim based on other acts evidence to the state courts. The fact that he may have used the term "fair trial" does not suffice to alert the state courts to the federal nature of his claim. Instead, this is the sort of claim that "may well present the echo of a federal claim while still not alerting the state court to the federal nature of the claim." *Lieberman v. Thomas,* 505 F.3d 665, 671 (7th Cir. 2007) (citing *Verdin v. O'Leary,* 972 F.2d 1467, 1475 (7th Cir. 1992)).

From this it also follows that Maertz has not identified any constitutional infirmities in his trial relating to other acts evidence. At most, he has cited a "garden-variety" type of 404(b) violation rather than an admission of evidence that fundamentally undercut the fairness of his trial. *Watkins*, 95 F.3d at 7. Admitting evidence of prior sexual assaults was not done to convince the jury to convict him based on those prior crimes, it was an effort to undermine Maertz's explanation – rendered implausible by the other acts evidence – that he had merely stopped the victim to chew

5

her out for safety reasons. This is the sort of evidence that is probative of the issues in the defendant's trial and commonly admitted in courts, and the state courts' determination that the evidence was properly admitted is sound, both as a matter of evidentiary and constitutional law. Accordingly, even if Maertz had properly exhausted the claim in state courts, he would not be entitled to relief here.

**B. "Golden Rule" Arguments**

The second claim at issue asserts that the trial court erred in not granting a mistrial after the prosecutor made allegedly improper "golden rule" arguments during closing. Such arguments may be unfair to the extent they ask the jury to place themselves in the positions of others – particularly the victim – when considering the issues in the case. Maertz alleges that the prosecutor made three such statements. First, when Maertz saw on the evening news that the police were looking for someone involved in the attempted abduction, he did not behave (the prosecutor argued) like someone who was innocent. Second, the prosecutor questioned Maertz's explanation that he was merely "chewing out" the victim because she had made a dangerous move with her bike in front of his car. The prosecutor asked the jury (rhetorically) if any of them had ever done such a thing, which of course they had not. Finally, the prosecutor asked the jury to consider that even if they believed Maertz's explanation that he was only yelling at the victim (rather than trying to abduct her), they should consider what legal authority Maertz had to do so and "think about this if that were your daughter on Highway 67."

The court of appeals deemed the first two of these arguments waived, as there had been no contemporary objection to them. Moreover, neither of the statements even appears to be a "golden rule" argument because they do not ask the jurors to put themselves in the victim's shoes. Instead

6

of unfair ploys for sympathy, they seem to appeal to the jurors' common sense and experience in evaluating Maertz's explanation of events, and certainly such arguments are fair game.

The court of appeals also found waived the third argument, which asked jurors to consider how they would feel if it were their daughter involved. Although defense counsel had objected and requested a sidebar, he did not move for a mistrial until after his own closing argument. "Without the contemporaneous motion for a mistrial, the trial court was unaware that Maertz considered the mere sustaining of the objection to be insufficient." 2007 WI App 19, ¶ 15, 298 Wis.2d 549, 727 N.W.2d 374.[1] Putting waiver aside, the court considered the question and concluded the trial court had not abused its discretion in refusing to grant a mistrial. It noted that the statement asking jurors to imagine their own daughter in that situation was a lone comment in a long closing argument. Moreover, the court found, that single comment could not be expected to alter the normal considerations jurors bring into the deliberation room. *Id.*

The court of appeals did not cite any federal cases or any constitutional principles in making its ruling. Neither did Maertz in his appellate brief, and in fact he merely argued that the trial court's ruling "misapplies Wisconsin law." (Answ., Ex. E at 18.) Again, however, the failure to cite federal law is not surprising. As the respondent notes, any prohibition on "golden rule" arguments does not arise out of a specific line of federal cases; instead, the state courts' discussion of "golden rule" arguments arose out of a line of state cases addressing that particular manifestation of prosecutorial misconduct. Petitioner is of course correct that fundamentally the question is one of due process, but the nomenclature and analysis used by the state courts suggests application of a distinct (albeit similar) group of principles. Indeed, as set forth below, courts applying federal

---

[1] The respondent does not seek dismissal on the basis of waiver.

7

constitutional law use different standards than those cited by Maertz and the court of appeals. Accordingly, I conclude that the petitioner did not sufficiently alert the state court that he was asking it to rule on a matter of federal constitutional law.

That said, petitioner is correct that the analysis boils down to whether the defendant was denied the right to a fair trial, and that is a question of due process. As such, although it does not appear that the petitioner presented the question as a matter of federal law, the issue more particularly calls to mind well-worn constitutional principles than does the state-law test for admissibility of "other acts" evidence discussed in Section 1 above. Because the issue is closer, it is worth exploring the merits of the petitioner's claim as well.

In *Darden v. Wainwright*, the Supreme Court set out a framework for evaluating prosecutorial misconduct. 477 U.S. 168, 181 (1986). The court first determines whether the prosecutor's statements were improper. Here, the court of appeals assumed that the prosecutor's statement suggesting the jurors imagine their own daughter in the victim's place was improper, and I see no reason to disturb that conclusion.

But a court must then determine whether an improper statement actually prejudiced the defendant. "In determining whether the prosecutors' remarks were prejudicial, 'it is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Ruvalcaba v. Chandler,* 416 F.3d 555, 565 (7th Cir. 2005) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181 (1986)). Here, as noted above, the court of appeals found that the stray comment from the prosecutor could not reasonably have been expected to sway the jury or in any way influence the outcome of the trial.

8

The court of appeals' conclusion was eminently reasonable. The prosecutor's comment was not an impassioned plea for sympathy but an isolated remark in a lengthy closing statement. Moreover, the comment was not even about what happened to the victim herself – the attempted abduction – it was made in the context of questioning the defendant's own explanation for why he was talking to the victim at all:

> Even if [he] stopped her to chew her out, he doesn't have any legal authority to do that. Certainly, he could have yelled at her, something like that, but he had no authority, no legal authority whatsoever, none, to stop her and detain her. And I'd ask you to think about this if that were your daughter on Highway 67.

2007 WI App 19, ¶ 13, 298 Wis.2d 549, 727 N.W.2d 374.

Though arguably improper, the prosecutor's suggestion was not the sort that infected the trial with unfairness. *Darden,* 477 U.S. at 181. As the court of appeals noted, the crime was an attempted abduction, which meant the victim did not experience the kinds of gruesome or physical injuries that could be expected to arouse the jury's passion. Finally, the court noted that the jurors had been instructed that the arguments of counsel were not evidence.

The state court of appeals did not specifically apply the factors set forth in *Darden* – a fact that underscores the state's position that the petitioner failed to fairly present the argument as a *federal* claim – but its analysis and conclusions paralleled the *Darden* court's. *See Hough v. Anderson,* 272 F.3d 878, 903 (7th Cir. 2001) ("The Supreme Court of Indiana did not recite with precision the factors set forth in *Darden*, but evaluated the impact of the prosecutor's arguments using the common rubric of Indiana law.") The prosecutor's isolated remark did not misstate the evidence or undermine any of the defendant's specific rights, and an instruction was given alerting the jury that arguments were not to be deemed evidence. *Darden,* 477 U.S. at 181. The court of

9

appeals' conclusion that the improper statement was essentially somewhere between minor and *de minimis* was tantamount to a recognition that the statement did not infect the defendant's trial with unfairness.

Having concluded that the court of appeals' conclusion was sound, I further note that the matter is not one for this court's independent judgment. Under the Antiterrorism and Effective Death Penalty Act, a federal habeas court cannot grant relief unless it concludes the state court's decision was objectively unreasonable. *Bartlett v. Battaglia,* 453 F.3d 796, 804 (7th Cir. 2006); 28 U.S.C. § 2254(d)(1). Even if this court disagreed with the court of appeals' analysis, there is no plausible basis for concluding that the state court's decision was an *unreasonable* application of controlling law. *Wright v. Van Patten,* --- U.S. ----, 128 S.Ct. 743 (2008) (Stevens, J., concurring, noting that even incorrect state decisions must be upheld unless they are unreasonable.) In sum, I conclude that the petitioner failed to fairly present the golden rule claim to the state courts as a federal claim and that, even if he did, the state court's resolution of the issue was reasonable.

## C. Procedural Default

From my conclusion that both claims are unexhausted it follows that both claims are procedurally defaulted. Wisconsin courts do not allow state petitioners a second go-round to bring claims they could have brought in earlier proceedings. *State v. Escalona-Naranjo,* 185 Wis. 2d 168, 181-82, 517 N.W.2d 157, 162 (Wis. 1994). Because the state courts would not allow Maertz to return to the state courts and exhaust his claims, the claims are defaulted now unless he can show cause and prejudice. He has made no effort to show either, and none is imaginable.

10

## II. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED**, and the first and second claims will be dismissed as procedurally defaulted. The petitioner is directed to file a brief in support of the remaining claim by July 10, 2008; a response brief will be due August 11, with a reply due August 29.

**SO ORDERED** this  9th  day of June, 2008.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge